INDUSTRIAL TRUST COMPANY, a corporation of the State of Delaware, Successor Trustee under the Last Will and Testament of Thomas M. Monaghan, Deceased, by appointment of the Chancellor,

*vs.*

MARY E. MONAGHAN, widow, JAMES E. CASSIDY, FRANCIS T. MONAGHAN, LILLIAN H. MONAGHAN, widow, and LILLIAN H. MONAGHAN, Executrix of the Last Will and Testament of William J. Monaghan, Deceased.

*New Castle, November 18, 1948.*

*William Poole,* of the firm of Southerland, Berl & Potter, for plaintiff.

*George Gray Thouron,* for Mary E. Monaghan, one of the defendants.

*Howard L. Williams,* of the office of Hering, Morris, James & Hitchens, for Lillian H. Monaghan, individually and as executrix under the will of William J. Monaghan, deceased.

SEITZ, Vice-Chancellor: The issue is whether the power granted in the will to the trustee to invade trust corpus could be transferred to the successor trustee.

Thomas M. Monaghan, hereinafter called the "testator," died on July 14, 1935, leaving a will dated May 7, 1931. By his will the testator left a business known as the M. Monaghan Estate to his cousin James E. Cassidy. He gave to his nephews Francis T. Monaghan and William J. Monaghan a business known as John J. Monaghan Company. Next, he left all of his real estate to his wife Mary E. Monaghan for her life and at her death it passed outright in equal shares to his nephews Francis T. Monaghan and William J. Monaghan and his cousin James E. Cassidy. The balance of his estate passed under the residuary clause of his will which provides:

"Fifth. All the rest, residue and remainder of my estate not otherwise specifically bequeathed, I give, devise and bequeath unto my beloved nephew, William J. Monaghan, in trust, nevertheless, to apply the net rents and incomes, and such part of the principal as he shall deem fit, for the support and maintenance of my beloved wife, Mary E. Monaghan, for and during the term of her natural life and, at her death, I give, devise and bequeath all the principal and such part of the income as shall be unexpended unto my beloved nephews, Francis T. Monaghan and William J. Monaghan and my beloved Cousin, James E. Cassidy, share and share alike, their heirs and assigns, forever."

The testator appointed his nephew William J. Monaghan, the executor of his will, as well as trustee under Item Fifth of his will. However, William J. Monaghan never acted as trustee and in fact never completed his

duties as executor. He died on June 14, 1945. The testator's widow was named administratrix and filed a final account for the estate. On February 2, 1948, this court appointed the plaintiff successor trustee under Item Fifth of the will of the testator. The successor trustee received a trust corpus worth about $10,000. The value at the testator's death is not known.

The testator's widow has requested payments from principal for support and maintenance, and the successor trustee has determined that her income is insufficient for that purpose.

While there are other issues presented in the complaint for instructions, the parties have submitted at the present time only the issue as to whether or not the successor trustee has the right to dispose of trust principal for the benefit of the life beneficiary, namely, Mary E. Monaghan. The testator's cousin, James E. Cassidy, and his nephew, Francis T. Monaghan, did not enter appearances in the action. The answer of the testator's widow admits the allegations of the complaint and contends that the testator's will gave the successor trustee the power to expend principal. The answer filed on behalf of the defendants Lillian H. Monaghan, widow, and Lillian H. Monaghan, executrix under the will of William J. Monaghan admits the factual allegations of the complaint dealing with the present issue, but contends that the power to expend principal did not pass to the successor trustee.

It has been recognized in Delaware, as elsewhere, that the testator's intent governs a determination as to what powers are transferred to a successor trustee. See *Jacobs v. Wilmington Trust Company,* 9 *Del. Ch.* 400, 80 *A.* 346, *affirming* 9 *Del. Ch.* 77, 77 *A.* 78. However, as Mr. Scott states, the question often is not what the testator intended, but what he probably would have intended had he thought about the matter. 2 *Scott on Trusts,* § 196. There seems to be some conflict in the authorities as to how the problem should be approached, namely, whether the power is pre-

sumed to pass to a successor trustee, absent clear evidence to the contrary, or whether it must affirmatively be shown that the testator intended the power to pass to a successor trustee. I think it clear from the decision of the Supreme Court of Delaware in *Jacobs v. Wilmington Trust Company*, *supra*, that this State is committed to the rule that *prima facie* every power given to trustees which enables them to deal with or affect the trust property passes with the office. The rule of the *Restatement of Trusts* appears to be about the same. 1 *Restatement of Trusts*, § 196. Moreover, the *Jacobs* case held that the mere fact that the power is one requiring the exercise of a wide personal discretion is not enough to exclude the *prima facie* presumption.

In this State, therefore, whenever the power given a trustee enables him to deal with or affect trust property, there is a presumption that such power passes to a successor. It is evident that under Article Fifth of the testator's will the trustee there appointed was clearly given the power to deal with and to affect trust property when he was given the right to expend principal. Such being the case, it follows that we approach the problem of construing the pertinent portion of Item Fifth with a presumption that the power given the trustee passed to his successor. Do the provisions of the will and the surrounding circumstances overcome this presumption?

The testator was 64 years of age when he died in 1935. He was survived by a wife but no children. The cousin and nephews mentioned in his will also survived him. At the testator's death, his widow was 60 years of age, and so far as the record shows, was apparently dependent upon him for support. At the date of the testator's death, his nephews, Francis T. Monaghan and William J. Monaghan, were 41 and 34 years old, respectively, while his cousin, James E. Cassidy, was about 43 years old. Except for the provision for her benefit in the residuary clause, the only benefit received by the testator's widow under his will was a life estate in one piece of real estate which produces only a small net rental for her benefit.

Counsel for the widow stresses the fact that the residuary clause provision authorizing the invasion of principal is primarily for the benefit of the testator's widow. He also points out that the testator had no children, and that the remaindermen under the residuary clause were also substantial beneficiaries under other provisions of the testator's will. Counsel for the widow therefore argues that the residuary clause was primarily for the benefit of the widow, and while the testator indicated trust and confidence in his nephew, it was incidental to his primary intent with respect to this provision of his will.

Counsel for Lillian H. Monaghan urges that the provisions of the will indicate an intent to confine the operation of the provision authorizing the invasion of principal to the original trustee. He argues that the will makes the original trustee the sole judge as to when and to what extent the principal may be invaded. This discretion, he contends, cannot be passed to a successor trustee because in granting this power to the original trustee the testator evidenced a peculiar trust and confidence in the judgment of the original trustee.

The inadequacy of the evidence concerning the surrounding circumstances adds to the court's difficulty here. However, we do know, and the successor trustee recognizes, that the testator's widow does not have sufficient income to meet her needs.

We approach this problem with the presumption that the power to invade principal passed to the successor trustee. Let us see whether the language of the will and the pertinent surrounding circumstances overturn this presumption.

Under Item Fifth, the testator left the residue of his estate to his nephew as trustee "to apply the net rents and incomes, and such part of the principal as he shall deem fit, for the support and maintenance" of the testator's widow for life.

Clearly, the quoted language gives the original trustee

a broad discretionary power with respect to the making of payments from principal. He was given the right to determine the time and amount of any such payment. However, he could only make such payments for the widow's support and maintenance. Thus, the trustee was given a discretionary power, but for an explicit purpose. While the language granting the power is somewhat more personal to the original trustee than is ordinarily the case where a power to invade principal is granted, nevertheless, I think it clear that the primary object behind the creation of this provision was to provide for the maintenance and support of the testator's widow. The testator obviously contemplated that the expenditure of principal might be necessary for his widow's support. Assuming there was no appreciable change in the value of the residuary estate from the date of his death until the settlement of his estate, we find that the residuary estate was only worth about $10,000. Inferring, as we must, that the testator knew of the approximate size of his residuary estate, we may well conclude that he realized it probably would not produce sufficient income to provide his widow with support. Such being the case, the burden of showing that the power to expend principal died with the original trustee is a heavy burden under the circumstances.

Where the discretionary power granted a trustee involves the essential welfare of the testator's widow, I believe the language creating the power should be considered nonpersonal, unless the language is only reasonably consistent with a contrary conclusion. The original trustee here was authorized to invade principal only for the support and maintenance of the testator's widow. It is true that the original trustee was given the power to determine what was "fit" for the support of the widow. However, I do not believe that this obligation is of such a personal nature that a successor trustee may not fairly determine what is a "fit" amount for the widow's support and still act within the general bounds which the testator fixed. As the Supreme Court of Delaware stated in *Jacobs v. Wilmington Trust*

*Company, supra,* the fact that the power is one requiring the exercise of a wide personal discretion does not of itself exclude the presumption that the power passed to the successor trustee. Moreover, the language of the Supreme Court of Wisconsin *In re Doe's Will,* 232 *Wis.* 34, 285 *N.W.* 764, 767, 126 *A.L.R.* 926, strikes me as being highly pertinent here:

"\* \* \* It is not lightly to be supposed that a testator meant to make the execution of trust powers dependent upon the life of a particular trustee, and it is reasonable to conclude that he did so only when he clearly and unmistakably manifests such an intention."

It must be conceded that there are factors which point to the possibility that the power granted the original trustee was personal. Thus, the original trustee was an individual many years younger than the testator's widow. He was also a relative of the testator and the beneficiary under the residuary clause. There are other evidences in the will of the testator's trust and confidence in the original trustee. However, opposed to these factors is the presumption that the power was not personal. There is also the fact that the life beneficiary is the testator's widow—a presumed primary object of his bounty. See 1 *Restatement of Trusts,* § 196, *Comment e.* Moreover, the other beneficiaries are not the testator's children and they are well provided for under other provisions of the will. Finally, the residuary clause constitutes the only substantial provision for the widow's benefit.

After a consideration of all the factors stressed by the opposing parties, I believe that preference should be given to those factors which dictate the conclusion that the power to invade principal passed to the successor trustee. However, as heretofore stated, I feel that the provision contemplated that the trustee in his discretion should determine how much principal, if any, should be advanced solely for the support and maintenance of the testator's widow. The same limitations will apply to the exercise of this power by the successor trustee.

An order accordingly will be advised on notice.